**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CURTIS THOMAS, | : | Civil No. 3:25-cv-1326 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| MRS. BOONE, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Curtis Thomas ("Thomas"), an inmate housed at the State Correctional Institution, Camp Hill, Pennsylvania, initiated this action against Unit Manager Boone and Reverend Anyanwu. (Doc. 1). The remaining claim is Thomas' First Amendment claim against Defendants in their individual capacities.

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 16). For the reasons set forth below, the Court will deny the motion.

## I. <u>Statement of Undisputed Facts</u>[1]

Thomas states that he is a Muslim and practices the religion of Al-Islam. (Doc. 1, at 4). He asserts that, during the month of Ramadan, he is required to fast for 30 days. (*Id.*). Thomas maintains that for the month of March 2025, he signed the "List to Fast" and fasted from March 1, 2025 to March 25, 2025. (*Id.*). Thomas alleges that Defendants removed him from the Ramadan fast list on March 25, 2025. (*Id.*). Thomas further alleges that he did not authorize this removal. (*Id.*).

Defendants assert that Thomas insisted on getting three meal trays a day despite allegedly fasting during Ramadan. (Doc. 17 ¶ 1). Defendants further assert that, on March 24, 2025, Thomas admitted to Boone that he had been eating during the fast period. (*Id.* ¶ 2). Thomas denies this assertion and insists that he "did not eat regular meal line trays during the month of Ramadhan, as this is against his sincerely held religious beliefs." (Doc. 22 ¶ 1).

Boone contacted Reverend Anyanwu to see if Thomas should be on the Ramadan list. (Doc. 17 ¶ 3; Doc. 22 ¶ 3). On March 25, 2025, Reverend Anyanwu removed Thomas from the Ramadan list. (Doc. 17 ¶ 4; Doc. 22 ¶ 4). Boone's staff was advised to no longer

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from the complaint, and the parties' statements of material facts and attached exhibits. (Doc. 1; Doc. 17; Doc. 17-1 through 17-7; Doc. 22).

give Ramadan trays to Thomas. (Doc. 17 ¶ 4; Doc. 22 ¶ 5). Thomas contends that Defendant Anyanwu removed him from the Ramadan list "without first speaking to [him] or ascertaining if there was a problem with the fast for [him]." (Doc. 22 ¶ 4). He further contends that "Mrs. Boone and her staff stopped giving [him] Ramadhan fast dinner trays of food to eat over [his] objection." (*Id.* ¶ 5).

Specific trays are designated for inmates who are fasting for Ramadan. (Doc. 17 ¶ 5). The trays were designated for Muslims who were participating in the 30-day fast. (*Id.*).

Defendants assert that Thomas consumed the designated Ramadan meals despite not actually fasting. (*Id.* ¶ 6). They further assert that Thomas also consumed regular meal trays during this time period. (*Id.* ¶ 7). Defendants contend that Thomas could not fast because he is diabetic. (*Id.* ¶ 8). In response, Thomas asserts that, as a diabetic, he can fast if he chooses to do so. (Doc. 22 ¶ 6). Thomas also contends that "[i]t is not Department of Corrections Policy to prohibit [d]iabetics from fast during the month of Ramadhan." (*Id.*).

Defendants assert that, pursuant to the Department of Corrections ("DOC") Religious Activities policy, Thomas had to sign a DC-462 release to receive a modified religious diet for an approved holy day observance. (Doc. 17 ¶ 9). They contend that Food Services is unable to accommodate inmates with documented allergies to certain foods or those who receive Therapeutic Diets with modified religious diets for holy day observances. (*Id.* ¶ 10). An inmate who is on a Therapeutic Diet for medical reasons, has a food allergy or is

receiving a snack bag, and still wishes to receive a modified religious diet for an approved holy day observance must sign a DC-462 Release from Responsibility for Medical Treatment form prior to being accommodated with a modified religious diet. (*Id.*). In addition, any Religious Meal shall serve as the participating inmates' regular lunch or supper meal, shall be selected from the master menu, and shall not be an extra meal in addition to the meal ordinarily served. (*Id.* ¶ 12).

On April 8, 2025, Thomas' Therapeutic Diet Order was renewed. (*Id.* ¶ 12). Thomas continued to receive a basic snack bag. (*Id.*). The basic snack bag is given with the dinner meal trays. (*Id.* ¶ 13). Thomas was allowed to keep the basic snack bag during Ramadan because it is served in the evening. (*Id.*). As a result, there was no need to complete a DC-462. (*Id.*).

Between March 25, 2025 and June 11, 2025, Thomas filed two grievances and one is relevant to the claims before the Court. (*Id.* ¶ 14). In Grievance number 1139270, Thomas alleged that he was removed from the Ramadan fasting list and that the removal infringed on his religious rights. (Doc. 17 ¶ 15; Doc. 22 ¶ 7). Thomas failed to identify Boone or Anyanwu in grievance number 1139270. (Doc. 17 ¶ 16). Defendants contend that Thomas failed to appeal the Facility Manager's response to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (*Id.* ¶ 17). In response, Thomas asserts that "he made all particular appeals". (Doc. 22 ¶ 7).

## II. Legal Standard

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record…or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. <u>Discussion</u>

Defendants seek judgment in their favor on the following grounds: (1) Thomas failed to establish that he has a sincerely held religious belief; (2) removing Thomas from the Ramadan fasting list was reasonably supported by a legitimate penological interest; (3) Defendant Boone was not personally involved in removing Thomas from the Ramadan fasting list; and (4) Thomas failed to exhaust his administrative remedies. (Doc. 18). The Court begins its analysis with the threshold question of whether Thomas has exhausted his administrative remedies prior to proceeding to federal court.

A. Administrative Exhaustion[2]

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court...to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The

---

[2] Because Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 23).

PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "An administrative remedy is unavailable when it "operates as a simple dead end[,]...is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

DC-ADM 804 describes the administrative remedies for inmate grievances. DC-ADM 804 defines a "grievance" as "[a] formal written complaint by an inmate related to a problem encountered during the course of his/her confinement." Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys., Policy No. DC-ADM 804 ("DC-ADM 804"), Glossary

of Terms, available at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf. DC-ADM 804 provides a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *Id.*; *see also Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. Id. § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. Id. § 2(B)(1).

DC-ADM 804 has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." *Id.* § 1(A)(11).

The record reflects that Thomas filed one relevant grievance—number 1139270. (Doc. 17 ¶ 15; Docs. 17-6, 17-7; Doc. 22 ¶ 7). On March 27, 2025, Thomas filed grievance number 1139270 regarding his removal from the list of the 2025 Ramadan participants. (Doc. 17-7, at 5).

On April 10, 2025, the grievance officer—Defendant Anyanwu—issued an initial review response and denied the grievance. (*Id.* at 4). The grievance officer found as follows:

> Your grievance regarding the removal of your name from the list of the 2025 Ramadan participants has been referred to me for a response. In your grievance you alleged that your name was removed from the list on March 25, 2025 without you making a request to be removed from the Ramadan list. You claim therefore that this action violates your religious rights and you request for a compensation in the amount of ten thousand dollars.
>
> I have investigated your grievance claims and make the following determination. Your name was dul[ ]y listed on the Ramadan participants list as you had requested to observe the Muslim thirty day fasting period. However, against the established rules and practice of Islam on which basis the DOC accommodated Muslim inmates with Sahur bags and special Ramadan meals, you were collecting three meals per day instead of one meal at evening time. On March 24, 2025, your Unit manager, Ms. Boone personally saw you doing this and confronted you and you accepted to her that you were not able to fast because of diabetic health challenges. Upon this verification, staff requested that your name be delisted from those observing the fast.
>
> Your right was not violated by this action and as a matter of fact, you are the one who violated the DOC policy regarding the conduct of Ramadan and you should have been written up for misconduct by the observing staff. Why they spared you, I don't know. Your grievance lacks merit and is hereby denied and dismissed. Any monetary compensation you asked for is also denied. No evidence of wrongdoing has been identified.

(Doc. 17-7, at 4).

Thomas appealed the first-level denial to the Facility Manager. (Doc. 17-7, at 2). On May 5, 2025, the Facility Manager upheld the initial response that denied the grievance, and reasoned as follows:

> I am in receipt of your appeal and have reviewed your original grievance as well as the Grievance Officer's response.
>
> In your appeal, you state that you are Muslim and that you "fast during the holy month of Ramadhan." You go on to state that you signed up to fast this year, which you did until "Mrs. Boone Unit Manager and Chapl[a]in Sam Anyanwu - Chaplaincy Program Director removed me from the Ramadhan fast list on March 25, 2025." You claim this is a violation of your rights. You indicate that you did not remove yourself, but that it was "forced upon" you against your will. You are asking for $10,000.00, which you state will be the amount you will request in court if the matter is not resolved. Additionally, you ask that staff be made aware that they "can not legally remove a Muslim from the Ramadhan fast list."
>
> I find the Grievance Officer properly investigated your grievance concerns and provided an appropriate response. As stated in the response, you were observed by Unit Manager Boone taking more than one meal at evening time. This was a violation of the established rules. You do not deny that you indicated to Ms. Boone that you were not able to fast due to diabetic health challenges. Because of this, you were appropriately removed from the list. Although you indicate that you did not remove yourself, you do not argue the reason you were removed, just that you should not have been removed. It was due to your own actions, of not appropriately fasting and following the established rules and practice of Islam, that you were taken from the list. No evidence of wrongdoing has been identified. Therefore, I uphold the initial response, and your appeal and any requested relief is denied.

(Doc. 17-7, at 2).

The record does not contain an appeal (if any) that Thomas may have submitted to SOIGA or a response (if any) from SOIGA.

Defendants first argue that Thomas failed to properly exhaust his claims because he failed to name Boone or Anyanwu in his initial grievance. (Doc. 18, at 6). While Thomas did not name Defendants Boone or Anyanwu in his initial grievance, he named them in his appeal to the Facility Manager. (Doc. 17-7, at 3). Thus, the prison officials were on notice of the persons claimed to be doing wrong. *Spruill*, 372 F.3d at 234 (finding that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance."). The Court will deny summary judgment on this ground.

Defendants next argue that Thomas failed to exhaust his claims because he did not file a final appeal to SOIGA. (Doc. 18, at 16-17). The record does not contain any copies of grievance documents reflecting that Thomas filed a final appeal of grievance 1139270 to SOIGA. (*See* Doc. 17-7). However, the printout of Thomas' grievance history indicates that the status of grievance number 1139270 is "SOIGA Response Comp". (Doc. 17-6, at 2). The Court assumes, without deciding, that this abbreviation means that SOIGA's response is "complete" and that SOIGA has provided their final answer. The Court will deny summary judgment on this ground.

B. First Amendment Claim

The First Amendment provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." U.S. CONST. amend. 1. The United States Supreme Court has explained that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* directs courts to assess the overall reasonableness of such regulations by weighing the following four factors: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify it; (2) whether there are alternative means of exercising the right that remain open to the prisoner; (3) the impact that an accommodation of the asserted right will have on guards and other inmates and on the allocation of prison resources generally; and (4) whether there are alternatives that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-91.

The burden is on the prisoner to disprove the validity of the regulation or decision. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). "This burden is 'heavy' because plaintiffs

must overcome the presumption that prison officials acted within their 'broad discretion.'" *Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (quoting *Shaw v. Murphy*, 532 U.S. 223, 232 (2001)).

Denial of a prisoner's request for a religious diet may amount to a violation of the Free Exercise Clause of the First Amendment. *DeHart v. Horn*, 227 F.3d 47, 61 (3d Cir. 2000) (remanding case to district court for further consideration of *Turner* factors in connection with prisoner's First Amendment religious diet claim).

### 1. Sincerity of Thomas' Religious Beliefs

Defendants dispute the sincerity of Thomas' religious beliefs. (Doc. 18, at 8-9). "[I]f a prisoner's request for a particular diet is *not* the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request, and there is no occasion to conduct the *Turner* inquiry." *Dehart*, 227 F.3d at 52. "It is in this way that prisons are protected from random requests for special diets by inmates whose alleged dietary restrictions are not the result of their religious convictions but rather their secular predilections." *Id.* (footnote omitted). On the other hand, if the prisoner's request for a particular diet is based on a sincerely held religious belief, the prisoner has a constitutionally protected interest upon which the defendants may not unreasonably infringe, and the court must conduct the *Turner* inquiry. *Id.*

Here, there is evidence from which a reasonable factfinder could conclude that Thomas has a sincerely held belief that his religion requires him to fast during the month of

Ramadan. Thomas asserts that he is a Muslim and practices the religion of Al-Islam and, during the month of Ramadan, he is required to fast. (Doc. 1, at 4; Doc. 22 ¶ 1). The record reflects that during the 2025 Ramadan time period, Thomas signed up to participate in the Ramadan fast and was initially accommodated. (Doc. 17-2). The record also reflects that Thomas was removed from the fasting list on March 25, 2025. (Doc. 17-1). Defendants maintain that Thomas was removed from the fasting list because he was observed receiving meal trays from the regular food line and because he is diabetic and cannot fast. (Docs. 17-1, 17-2).

As to taking food from the regular food line, Thomas denies that he took food from the mainline during the month of Ramadan, "as this is against his sincerely held religious [beliefs]." (Doc. 22 ¶ 1). With respect to being diabetic, Thomas asserts that he is capable of fasting during the month of Ramadan and DOC policy does not prohibit diabetics from fasting during Ramadan. (*Id.* ¶ 6).

If Thomas did take food from the regular food line and was incapable of fasting due to his diabetes (as Defendants contend), a factfinder may conclude that his belief that he is required to fast is not sincerely held. However, the evidence in the record does not compel such a conclusion. The parties strongly dispute whether Thomas took food from the regular food line and whether Thomas' diabetes prevents him from fasting. In addition, a factfinder could conclude that Thomas holds religious beliefs which at times he fails to live up to, even though those beliefs are sincerely held. Therefore, Defendants are not entitled to summary

judgment on the basis that Thomas' religious beliefs are not sincerely held. Thus, the Court turns to an analysis of the *Turner* factors.

### 2. The *Turner* Factors

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the *Turner* test must be applied to determine whether the curtailment at issue is reasonably related to penological interests. *DeHart*, 227 F.3d at 51.

On the record before the Court, genuine issues of material fact preclude summary judgment with respect to Thomas' First Amendment claim.

The first *Turner* factor is whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it. "According to *Turner*, a regulation will be sustained unless 'the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."' *Nasir v. Morgan*, 350 F.3d 366, 372 (3d Cir. 2003) (citing *Turner*, 482 U.S. at 89-90). "'[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003). Defendants contend that the Ramadan policy is rationally related to legitimate penological goals. (Doc. 18, at 9-11). Specifically, Defendants contend that the Ramadan policy "protects against serving extra meals to inmates who claim to be observant Muslims but in fact break daytime fast and eat the nighttime Ramadan meal." (*Id.* at 10; *see also* Doc. 17-3, DC-ADM 819, Religious Activities). Defendants maintain that the Ramadan

policy allowed Thomas to observe Ramadan in accordance with the requirements of Islam, but it did not allow him to break the fast. (*Id.*). This evidence demonstrates that these Ramadan policies and practices are rationally related to valid legitimate penological interests.

The second *Turner* factor considers whether alternative means of exercising the right exist. Here, a rational factfinder could conclude on the record that Thomas' religious beliefs regarding fasting during the period of Ramadan have been substantially burdened by Defendants. The parties dispute whether Thomas was rightfully prevented from participating in the Ramadan fast when Defendants removed him from the fast list. If Thomas fasted during the daylight hours, did not consume meals during the fasting period, and was removed from the Ramadan fast list, he would not have received the nighttime Ramadan meal. Thus, there are material facts in dispute as to whether Defendants accommodated Thomas during the month of Ramadan and whether they interfered with Thomas' constitutionally protected right to freely exercise his religious beliefs.

Defendants assert that Thomas had an alternative means of observing Ramadan by signing a Religious Diet Memo of Understanding, "which outlines the rules surrounding participation in and the expectations of behavior befitting inmates receiving modified religious diet." (Doc. 17-3, DC-ADM 819 § 1.E.1.d; Doc. 18, at 10-11). Defendants maintain that Thomas did not sign a Religious Diet Memo of Understanding. (Doc. 18, at

10-11). There is no evidence in the record as to why Thomas did, or did not, sign a Religious Diet Memo of Understanding.

Defendants also assert that Thomas had an alternative means of observing Ramadan by signing a DC-462 Release from Responsibility for Medical Treatment form. (Doc. 17-3, DC-ADM 819; Doc. 18, at 11). DC-ADM 819 provides that, "[a]n inmate who is currently on a Therapeutic Diet for medical reasons, has a food allergy or is receiving a snack bag, and still wishes to receive a modified religious diet for an approved holy day observance must sign a DC-462 Release from Responsibility for Medical Treatment form...prior to being accommodated with a modified religious diet." (Doc. Doc. 17-3, DC-ADM 819 § 1.E.1.e). However, the record reflects that "there would have been no need [for Thomas] to complete a DC-462. He was only ordered a basic snack bag which he still would have been allowed to keep during Ramadan. We would not have stopped that since the snack bags are given with the dinner meal trays." (Doc. 17-5, at 2). There is a genuine dispute as to whether Thomas had alternative means of exercising his right to free exercise of religion.

The third *Turner* factor measures the impact of the accommodation on the resources available in the prison. Defendants have articulated the impact the accommodation would have on the prison officials—Defendants assert that prison officials would have to determine which Muslim inmates broke their fast and would then have to be denied a nighttime Ramadan meal. (Doc. 18, at 12).

Finally, "the [fourth factor] inquiry is whether there are alternatives that would impose only '*de minimis* cost to valid penological interests.'" *Fraise v. Terhune*, 283 F.3d 506, 520 (3d Cir. 2002) (quoting *Turner*, 482 U.S. at 91). As stated, if Thomas fasted during the daylight hours, but was no longer on the Ramadan fast list, he would not have received the nighttime Ramadan meal. Because Thomas was removed from the Ramadan fast list, it is not clear whether he had other avenues of religious fasting available.

This analysis reveals that material facts remain in issue with respect to Thomas' First Amendment claim. The Court will deny summary judgment with respect to this claim.

C. Personal Involvement of Defendant Boone

To impose liability upon a defendant in a section 1983 action, the plaintiff must show that the defendant had personal involvement in the wrongdoing. *Williams v. City of York*, 967 F.3d 252, 261 (3d Cir. 2020). Respondeat superior alone does not give rise to section 1983 liability. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). An allegation that the defendant was responsible for supervising those involved, without more, is insufficient. *Rode*, 845 F.2d at 1208. Rather, liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct. *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207). The plaintiff must describe the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct. *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, 845 F.2d at 1207).

Constructive knowledge is not enough; the defendant must have had actual knowledge of the conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995)).

Defendants argue that Unit Manager Boone was not personally involved in the decision to remove Thomas from the Ramadan fasting list. (Doc. 18, at 13-14). However, Defendants have submitted an email from Unit Manager Boone to Reverend Anyanwu, wherein she states:

> I've had some staff inquiring about [Thomas] insisting on getting a tray for all 3 meals but is still on the Ramadan list. I was told in the past that he wanted off Ramadan but he denied this. Today as I helped feed/collect trays he admitted he's been eating because he can't fast due to having diabetes. I have another individual on the unit that had to be removed due to a similar issue. Should he or should he not be on the Ramadan list if he is eating trays/diabetic?

(Doc. 17-1, at 2). In response, Reverend Anyanwu indicated that he was removing Thomas from the fast list and stated, "[p]lease advise your staff not to give him Ramadan trays anymore." (*Id.*).

Based on this evidence, Defendant Boone had some level of involvement in Thomas' removal from the Ramadan fasting list. As such, the Court will deny Defendants' motion for summary judgment based on lack of personal involvement of Unit Manager Boone.

## IV. Conclusion

The Court will deny Defendants' motion for summary judgment. (Doc. 16). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October 19, 2026